United States District Court
Southern District of Texas
**ENTERED**
January 28, 2026
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# MCALLEN DIVISION

| | | |
|---|---|---|
| Analicia Velasco, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action M-23-0323 |
| | § | |
| IAS Logistics DFW, LLC d/b/a | § | |
| Pinnacle Logistics, | § | |
| *Defendant.* | § | |

## MEMORANDUM AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 3. Pending before the court is Defendant's Motion for Summary Judgment, ECF No. 23. The court recommends that the motion be **GRANTED**.

### 1. Background

Plaintiff Analicia Velasco worked as a Terminal Manager for Defendant, IAS Logistics DFW d/b/a Pinnacle Logistics (Pinnacle), for approximately five months from November 2021, until her termination in April 2022. Velasco Dep.,[1] ECF No. 23-4 at 6:3–9, 24:6–14. Velasco alleges in her Second Amended Petition that Pinnacle wrongfully terminated her employment, discriminated against her based on her age and gender, subjected her to sexual harassment, retaliated against her for reporting harassment, and violated her right to privacy. ECF No. 1-6 at 4–7.

Velasco supervised approximately nine employees in her role at Pinnacle. ECF No. 23-4 at 7:24–8:10. By December 2021, after Velasco had been working for about a month, multiple employees had complained about Velasco's managerial style. ECF No. 23-1

---

[1] Because multiple exhibits include unnumbered pages, the court cites to page numbers as provided in the ECF banner, not the original pagination.

at 7. Velasco's supervisor, Canny Millan, disciplined Velasco with a verbal warning for improper conduct and substandard work. *Id.* According to the disciplinary report,[2] employees complained that Velasco would yell at them and speak to them in an accusatory manner. *Id.* The report states that consequences for a failure to improve would include possible suspension or termination. *Id.* Millan commented in the report that "[t]his is a learning curve" since Velasco was new to the team. *Id.*

Around December 16, 2021, Velasco was suspended from work after disciplining an employee. ECF No. 24-1 at 2. On December 18, Velasco contacted Millan for an update on her suspension. *Id.* Millan informed Velasco that there was no investigation into the incident, that Human Resources was not notified, and that Velasco should return to work the following Monday. *Id.*

In January 2022, Velasco felt responsible for improving the terminal where her team was based. ECF No. 23-4 at 25:3–6. Velasco explains that she told her team, around January 3, 2022:[3]

> [W]e have to clean, clean the bathrooms, clean -- this is our home away from home. So I said, we're gonna -- the cabinets outside in the warehouse, 'cause we had cabinets where the [truck] drivers did their, you know, their write-ups, their manifest, or whatever they may be, I said, I'm gonna clean it, . . . if you have any

---

[2] In response to Pinnacle's Motion for Summary Judgment, Velasco argues in one sentence that the disciplinary reports were "manufactured." ECF No. 24 at 15. To support her argument, Velasco notes that she did not sign any of the disciplinary reports. *Id.* Velasco did not move to strike the reports or otherwise argue that they were inadmissible. Thus, the court considers them as competent summary judgment evidence.

[3] Velasco's briefing includes dates that are unsupported by the evidence. *Compare* ECF No. 24 at 2 ("on February 3rd, 2022, while the Plaintiff was cleaning the driver's area, she found . . ."), *with* ECF No. 23-5 at 8 (stating that Velasco cleaned the warehouse cabinet on January 3, 2022). The court relies on the dates supported by the evidence.

> personal items that are around there, take them home.
> So the drivers take off and they go out to the routes
> and I go out to the warehouse and I start cleaning the
> area. [] I open the cabinet door and I saw a 22-inch
> dildo, really nasty and dirty. Immediately, I took a
> picture of it and I text the picture to Canny [Millan.]

*Id.* at 25:7–24. The text exchange between Velasco and Millan proceeded as follows:

> Velasco: [image]
> > Should I put on group and ask whom ever it
> > belongs to to take it home
>
> Millan:  What is that?...
>
> Velasco: Grozzzzzz
> > Nasty  😧
> > [image]
> > Look again
>
> Millan:  😃 😂 😂 😂
> > Let's throw that away..
>
> Velasco: Ma'am!!!!!

ECF No. 23-5 at 4–5. Velasco ignored Millan's suggestion to throw the item away, closed the cabinet door, and left the item there. ECF No. 23-4 at 25:23–26:17. Later, Velasco asked another employee to throw the item away. *Id.* at 26:2–17. The employee threw it away, and Velasco never saw it again. *Id.*

On January 13, 2022, Millan again issued a verbal warning to Velasco and disciplined Velasco for improper conduct and improper or substandard work. ECF No. 23-1 at 11. According to the report, employees complained about Velasco withholding toilet paper to save money for the end of year bonus. *Id.* The report also states that employees complained about Velasco's poor communication and that she changed employee schedules without notice. *Id.*

At one point, Millan and Millan's supervisor had a meeting with Velasco and told Velasco that the truck drivers were having conflicts, that Velasco needed to be nicer to them, and that Velasco needed to let the drivers do their work. ECF No. 23-4 at 16:12–25.

Velasco stated in her sworn Charge of Discrimination to the Texas Workforce Commission that the drivers "harassed her about the sex toy" for a few weeks after she found it. ECF No. 24-1 at 2. In the Charge, Velasco states that, around March 13, 2022, she emailed the Safety Director for Pinnacle and told him that she felt sexually harassed by the drivers and that Millan created a hostile work environment. *Id.*

Another disciplinary report, dated March 14, 2022, states that on March 11, 2022, Velasco violated company safety guidance and mismanaged a driver breakdown situation. ECF No. 23-1 at 37–38. The report states that Velasco's mismanagement resulted in several hours of lost work for multiple drivers. *Id.* at 37. The disciplinary action recommended in the report is termination. *Id.*

Finally, on March 15, 2022, Millan disciplined Velasco for improper conduct and improper or substandard work.[4] ECF No. 23-1 at 9. The disciplinary report again states that several employees complained about Velasco's management. *Id.* Employees stated that they could not comfortably work "with the constant yelling, being talked down to or ignored[,]" and lack of communication. *Id.* The employees reported "a hostile environment that delays or prevents regular functions[.]" *Id.*

---

[4] There are two disciplinary reports, one dated March 3, 2022 and another March 15, 2022, that appear to be identical except for their dates. *Compare* ECF No. 23-1 at 9–10 *with* ECF No. 23-1 at 13–14. Since both reports are dated March 2022 and since Millan later stated in an email that she only spoke to Velasco about the complaints once in March, on March 15, ECF No. 23-1 at 16, the court construes the two March reports together.

Millan wrote in the comments of the report that this was the third time that the employees raised concerns to her about Velasco's management style. *Id.*

On March 28, 2022, the Safety and Compliance Manager at Pinnacle sent an email regarding questions about whether Pinnacle was "covered on our basis for terminating a terminal manager." ECF No. 23-1 at 18. The next day, Millan stated in an email that she needed to dismiss Velasco. *Id.* at 17.

On March 30, 2022, Millan stated in another email that Velasco had received many employment complaints and had not met the company's expectations for her position. ECF No. 23-1 at 16. In the email, Millan explained that Velasco's "lack of knowledge of the daily operation is not only jeopardizing the operation, but affecting the safety of drivers and straining the relationship of the biggest customers for the MFE terminal. [Velasco] is insubordinate, does not follow instructions, misses regular work and meetings." *Id.*

On March 31, 2022, Velasco was "held out of service" (suspended) due to the March 11 incident. ECF No. 23-1 at 15. On April 5, Velasco's suspension was extended until April 7 at 3 pm. ECF No. 23-1 at 40.

On April 6, 2022, Velasco emailed Ms. Birdow and Mr. Coleman, both of whom worked for Pinnacle HR, and explained that she found a sex toy in January. ECF No. 23-5 at 8–9. Velasco also stated in the email that three drivers "would smile with a smirk, laugh at me as i [sic] conducted meetings and when ever i [sic] walked by them." *Id.*

On April 7, 2022, Velasco was terminated. ECF No. 23-4 at 24:6–25, 33:12–34:6; ECF No. 23-9 ¶ 16.

Velasco now alleges multiple causes of action under the Texas Commission on Human Rights Act (TCHRA) for discrimination based on her gender and age, retaliation, and

harassment. ECF No. 1-6 at 4–6. Velasco also alleges a cause of action under Texas law for invasion of privacy.

### 2. *Legal Standard*

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a rational jury could not find for the nonmoving party based on the complete record. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, "[t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25 (1986)). If this burden is met, the nonmovant must then "go beyond the pleadings," using competent summary judgment evidence to cite "specific facts" showing a genuine issue for trial. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

The court reviews all evidence and reasonable inferences in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The court, however, does not have a duty "to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) ("Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence

supports [the] claim."). Although the court needs to consider only the cited evidence, it is allowed to consider other materials in the summary judgment record. Fed. R. Civ. P. 56(c)(3).

"[C]onclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence'" are not enough to defeat a properly supported motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). "[T]here must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### 3. Analysis

As the court stated above, it is Velasco's burden to "go beyond the pleadings," and cite "specific facts" showing a genuine issue for trial. *McCarty*, 864 F.3d at 357. The court does not have a duty to search the record for material fact issues, and conclusory allegations or unsubstantiated assertions are not enough to defeat a properly supported motion for summary judgment. *RSR Corp.*, 612 F.3d at 857; *Turner*, 476 F.3d at 343.

Velasco has not met her burden. Velasco's arguments related to multiple causes of action (e.g., harassment and invasion of privacy) do not cite *any* evidence. To the extent that Velasco attempted to incorporate her *entire* deposition into the record without citations, *see* ECF No. 24 at 3, Velasco did not clearly identify in her response specific evidence in the record nor articulate precisely how that evidence supports her claim. Even so, the court has considered all of the cited evidence as well as other evidence not specifically cited in the parties' briefs. The court turns to Velasco's claims.

Velasco alleges causes of action under the TCHRA for discrimination based on her gender and age, retaliation, and

harassment. ECF No. 1-6 at 4–6. Velasco also alleges a cause of action for invasion of privacy.

TCHRA claims based on gender and age are analyzed under the analogous federal precedents interpreting Title VII of the Civil Rights Act of 1964 (Title VII) and the Age Discrimination in Employment Act of 1967 (ADEA). *See Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 505 (Tex. 2012) ("we have looked to federal law for guidance in situations where the TCHRA and Title VII contain analogous statutory language"); *Smith v. AT&T Mobility Servs., L.L.C.*, No. 21-20366, 2022 WL 1551838, at *2 (5th Cir. May 17, 2022) (analyzing ADEA and TCHRA age-discrimination claims together under federal law).

Direct evidence of discriminatory or retaliatory intent is rare. *See Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005). When based on circumstantial evidence, claims for discrimination and retaliation are analyzed under the burden-shifting approach outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997, 1000 (5th Cir. 2022) (applying the burden-shifting approach to retaliation and discrimination claims).

Here, there is no direct evidence of discrimination or retaliation. Thus, the court applies the *McDonnell Douglas* burden-shifting framework to Velasco's claims of discrimination and retaliation. The burden-shifting approach places the initial burden on the plaintiff to establish a prima facie case of discrimination or retaliation. *See Saketkoo*, 31 F.4th at 999. If the plaintiff meets the initial burden, the defendant must respond by providing a legitimate, nondiscriminatory reason for its action. *Id.* If the defendant meets its burden, the plaintiff must produce evidence showing that the proffered reason is pretextual. *Id.*

### A. Discrimination

To establish a prima facie case of discrimination based on gender and age, Velasco must show that she (1) was a member of a protected group, (2) was qualified for her position, (3) was subject to an adverse employment action, and (4) was replaced by or was treated less favorably than other similarly situated employees outside her protected group. *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021); *Saketkoo*, 31 F.4th at 997–98; *Awe v. Harris Health Sys.*, No. 25-20144, 2026 WL 83762, at *2 (5th Cir. Jan. 12, 2026) (stating that the fourth element in an age discrimination claim requires a plaintiff to show that they were "treated less favorably than similarly situated younger employees (i.e., suffered from disparate treatment because of membership in the protected class)").

Velasco belongs to protected groups based on her gender and age as a woman who was older than 40 at the time of the adverse employment action. *See* 29 U.S.C. § 631 (stating that the ADEA's prohibitions are "limited to individuals who are at least 40 years of age").

Pinnacle argues that Velasco cannot establish her prima face case for gender or age discrimination because her claims are based entirely on her own subjective belief that she was discriminated against. ECF No. 23 at 15. Pinnacle also argues that, because Velasco's ultimate replacement was a woman who was older than 40 when she was hired, there is no evidence that Velasco was replaced by or treated less favorably than other similarly situated employees outside her protected groups. *Id.*

Velasco has not met her burden to show her prima facie case for gender discrimination. Velasco argues, and the evidence shows, that she was replaced by a woman. ECF No. 24 at 12; ECF No. 23-9 ¶ 20. Velasco does not argue or provide evidence showing that she was treated less favorably than someone outside her protected

9

group. ECF No. 24 at 12. Thus, Velasco has not established the prima facie case for her gender discrimination claim. That claim should be dismissed.

The court turns to the prima facie case for Velasco's age discrimination claim. Velasco was 58 years old when she was terminated, and she was replaced by a woman who was 41 years old at the time she was hired. ECF No. 24-1 at 4; ECF No. 23-9 ¶ 20. "[A] plaintiff's replacement must be 'substantially younger' to create an inference of discrimination." *Flanner v. Chase Inv. Services Corp.*, 600 F. App'x 914, 918 (5th Cir. 2015). The court need not decide whether Velasco demonstrated a fact question as to the prima facie case for her age discrimination claim because, even if she did, she has not shown that Pinnacle's reason for her termination is pretextual.

If Velasco had met her initial burden to establish her prima facie case of discrimination based on her age or gender, the burden would shift to Pinnacle to provide a legitimate, nondiscriminatory reason for Velasco's termination. Pinnacle states that, after an investigation into Velasco's management of the March 11 incident, Velasco was terminated because of her poor performance. ECF No. 23-1 at 16–18 (describing complaints against Velasco and Velasco's poor performance and asking whether Pinnacle is "covered on our basis for terminating" Velasco); ECF No. 23-4 at 24:15–25 (stating that after completing the investigation into the March 11 incident, Pinnacle decided to terminate Velasco); ECF No. 23-1 at 37–38 (disciplinary report stating that Velasco would be terminated for the March 11 incident). Poor performance is a legitimate, nondiscriminatory reason for termination. *Owens v. Circassia Pharm., Inc.,* 33 F.4th 814, 826 (5th Cir. 2022).

Accordingly, the burden then shifts back to Velasco to present evidence sufficient to establish a genuine issue of material fact about whether Pinnacle's asserted reason for termination is

pretext. *Owens*, 33 F.4th at 826. The evidence must allow fair-minded factfinders to reach different conclusions about whether Pinnacle's proffered reason was, in fact, the reason for Velasco's termination. *Id.* A plaintiff can meet her burden to show pretext with circumstantial evidence, including evidence of disparate treatment or evidence tending to show that the employer's explanation is unworthy of credence. *Id.* But the ultimate determination is whether, viewing all of the evidence in a light most favorable to the plaintiff, a reasonable factfinder could infer discrimination. *Id.* (citing *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000)).

Velasco has not met her burden to raise a material fact dispute as to pretext for her gender or age-based discrimination claims. Velasco argues that "her performance was perfectly satisfactory" and that the multiple disciplinary reports against her were "manufactured." ECF No. 24 at 15. Velasco does not cite any evidence to support her arguments aside from pointing out that she did not sign the disciplinary reports. *Id.* She also claims that she did not see the disciplinary reports prior to this litigation, and she stated during her deposition that her performance issues were never brought to her attention during the time of her employment. ECF No. 23-4 at 9:13–10:23, 18:25–19:24.

Velasco's laudatory opinion of her own work performance and apparent ignorance of her disciplinary issues is not sufficient to defeat summary judgment. Velasco admits that there were numerous incidents for which she was disciplined. ECF No. 23-4 at 9:1–6. She does not deny that employees complained about her management style. *Id.* at 17:6–12. She does not deny that she was withholding toilet paper. *See id.* at 16:12–25. She does not deny that she was suspended pending an investigation into the March 11 situation, which appears to have been the final infraction that led to her being terminated. *Id.* at 22:5–25. Velasco

presents no evidence to demonstrate that the incidents leading to her discipline did not take place. The evidence shows that Velasco's employment with Pinnacle was rife with complaints. Velasco presents no evidence from which the court can infer that Pinnacle's proffered reasons for firing her are pretextual. There is no evidence that would allow fair-minded factfinders to reach different conclusions about whether Pinnacle's proffered reason was, in fact, the reason for Velasco's termination.

Pinnacle's motion as to Velasco's gender and age discrimination claims should be granted.

### B. Retaliation

To establish her prima facie case for retaliation, Velasco must show that: (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there is a causal connection between the two. *Saketkoo*, 31 F.4th at 998–1000. Pinnacle disputes the first and third elements of Velasco's retaliation claim. ECF No. 23 at 16–17.

The court first considers whether Velasco provided evidence that she engaged in a protected activity. "A general allegation of hostility is not enough." *Saketkoo*, 31 F.4th at 1000 ("an employee must at least have referred to conduct that could plausibly be considered discriminatory in intent or effect, thereby alerting the employer of its discriminatory practices"). Even where a plaintiff complains of unfair treatment, a plaintiff must "demonstrate[] that she put the employer on notice that her complaint was based on [] discrimination." *Harris-Childs v. Medco Health Sols., Inc.*, 169 F. App'x 913, 916 (5th Cir. 2006).

Velasco's conclusory statement in her Charge of Discrimination that she reported sexual harassment to Pinnacle's

Safety Director in an email on March 13 is insufficient.[5] ECF No. 24-1 at 2. That email does not mention harassment based on any protected characteristic under the TCHRA. *See* ECF No. 23-5 at 3. Velasco testified that she was not sure whether she referenced *sexual* harassment when she reported harassment. ECF No. 24-2 at 59:9–25 ("I used, bullying, I used, toxic environment, toxic work environment, but . . . I cannot guarantee that I used the word, sex, but overall I meant everything, harass [sic]"). However, on the eve of her termination, Velasco reported finding the sex toy, ECF No. 23-5 at 8, and stated that she believed it was an act of harassment against her. The court continues its analysis assuming, without deciding, that there is a fact question as to whether Velasco engaged in a protected activity.

"To demonstrate that a causal link exists between the protected activity and the adverse employment action at the prima facie stage, an employee can show close enough timing [that is, temporal proximity,] between her protected activity and the adverse employment action." *Saketkoo*, 31 F.4th at 1001. Velasco states that she reported sexual harassment around March 13. ECF No. 24-1 at 2. Velasco emailed HR about finding the sex toy on April 6. ECF No. 23-5 at 8. She was suspended on March 31, and terminated on April 7, 2022. ECF No. 23-9 ¶¶ 13, 16. There is sufficient temporal proximity to create a fact question as to a causal connection at the prima facie stage. *See Garcia v. Pro. Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019) ("a period of two months is close enough to show a causal connection").

Thus, the burden shifts to Pinnacle to provide a legitimate, nonretaliatory reason for Velasco's termination. The court has

---

[5] The email discusses a dispute between Velasco and Millan about cleaning the bathroom. ECF No. 23-5 at 3. Velasco mentions that Millan often tried to intimidate Velasco, and that Velasco felt that the workplace was hostile, but Velasco does not raise any concerns that relate to a protected characteristic under the TCHRA.

already found that Pinnacle's purported reason for Velasco's termination—poor performance—is a legitimate reason for termination.

Thus, the burden shifts back to Velasco to show that Pinnacle's proffered reason for her termination is a pretext for retaliation. In the context of a retaliation claim, pretext turns on whether the protected conduct was the "'but for' cause of the adverse employment decision." *Owens*, 33 F.4th at 835 (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996)). "[E]ven if a plaintiff's protected conduct is a substantial element in a defendant's [adverse employment action], no liability for unlawful retaliation arises if the employee would have [undergone that action] even in the absence of the protected conduct." *Long*, 88 F.3d at 305 n.4 (citation omitted). A plaintiff may meet their burden to show pretext by combining suspicious timing with other significant evidence of pretext. *Owens*, 33 F.4th at 835. The court must consider whether a plaintiff's evidence is sufficient for a reasonable jury to find but-for causation. *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020), *as revised* (Aug. 14, 2020).

Velasco argues generally, without citing evidence or providing specific examples, that there is a causal connection between her complaints of harassment and her termination. ECF No. 24 at 14–15. Other than temporal proximity, however, Velasco does not provide any evidence to demonstrate that she was fired because of her complaints to management or that she would not have been fired in any event due to her performance issues. Again, as discussed above, Velasco admits that she was disciplined on numerous occasions. ECF No. 23-4 at 9:1–6. There is no dispute that Velasco was disciplined for mishandling the March 11 situation. *Id.* at 22:4–25. There is no evidence indicating that Velasco's April 6 email was a but-for cause of her termination. In

fact, the evidence shows that Pinnacle had contemplated Velasco's termination several days before Velasco's April 6 email. Velasco did not identify any evidence that would support a rational inference that her termination was based on retaliation. Accordingly, Pinnacle's motion as to Velasco's retaliation claim should be granted.

### C. Harassment

Sexual harassment is a recognized cause of action under the TCHRA, and courts look to analogous federal law, here, Title VII, in applying the state Act. Tex. Lab. Code §§ 21.142, 21.051; *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 (Tex. 2010). Texas recognizes two general types of sexual harassment: (1) quid pro quo, in which employment benefits are conditioned on sexual favors, and (2) harassment that creates a hostile or offensive work environment. *Id.*; *see also Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 n.5 (Tex. 2004).

Velasco does not state which form of harassment she endured. However, Velasco does not allege, argue, or provide any evidence that she underwent quid pro quo harassment. Thus, the court construes Velasco's sexual harassment claim as harassment that created a hostile or offensive work environment.

"A hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (omitting internal quotation marks). To establish a prima facie case for a hostile work environment, Velasco must show that she (1) is a member of a protected group; (2) suffered unwelcome harassment; (3) the harassment was based on her membership in the protected group; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should

have known of the harassment and failed to take prompt remedial action.[6] *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

Pinnacle argues that Velasco cannot show the fourth or fifth elements of her harassment claim because: the harassment was not severe or pervasive, Velasco was not offended by the harassment, and Pinnacle did not fail to take remedial action. ECF No. 23 at 11–14. In response, Velasco merely argues, without citing any evidence, that Pinnacle created a hostile environment that interfered with Velasco's work performance and that was "extremely detrimental" to Velasco's emotional and physical health. ECF No. 24 at 12–13.

The court first considers whether Velasco identified evidence that the harassment affected a term, condition, or privilege of her employment. For harassment to affect a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive" and create an abusive working environment. *Gibson v. Verizon Servs. Org., Inc.*, 498 F. App'x 391, 394 (5th Cir. 2012). "This element is disjunctive—if a single instance of the conduct . . . was severe enough on its own to create a hostile work environment, then it need not have been pervasive for this element to be satisfied." *Abbt v. City of Houston*, 28 F.4th 601, 608 (5th Cir. 2022).

The environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."

---

[6] Stated another way, the Supreme Court of Texas has held that a hostile work environment claim for sexual harassment under the TCHRA arises when "(1) an employee was subjected to unwelcome sexual harassment, (2) the employee was harassed because of his or her sex, (3) the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile work environment, and (4) some basis exists for holding the employer liable." *Fossil Group, Inc. v. Harris*, 691 S.W.3d 874, 881 (Tex. 2024).

*Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 433 (5th Cir. 2022) (citation omitted). To determine whether an environment is objectively hostile, courts consider the totality of the circumstances, including the conduct's frequency, severity, whether it is physically threatening, and whether it interferes with the employee's work performance. *Id.* "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" are not enough to alter the terms and conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, (1998) (citation and internal quotation marks omitted).

Velasco did not cite any evidence to show that the harassment she endured affected a term, condition, or privilege of her employment. In her argument supporting her harassment claim, Velasco does not cite any evidence or supporting case law. She states that, for a few weeks after she attempted to clean the cabinets in the drivers' area, "the drivers harassed [her] about the sex toy." ECF No. 24-1. Velasco argues that her work environment harmed her emotional and physical health, but she does not provide any evidence to support her argument. Velasco does not say what the drivers said to her. She does not identify the language used or the context in which it was used.

The court went well beyond Velasco's briefing and scoured the record for evidence that could possibly support Velasco's claim. Velasco testified that the drivers made vulgar, sexually explicit comments to her. ECF No. 23-4 at 29:2–30:2; ECF No. 24-2 at 66:5–24 (stating that three employees made sexually explicit comments). Velasco also found a sex toy while cleaning, which she interpreted as harassing. Velasco also testified that someone at Pinnacle put a dead rat on her desk, slashed her tires, and scraped her car with keys. ECF No. 23-4 at 30:1–19. On the one hand, many of these things have nothing to do with Velasco's gender. They could just as easily be interpreted to be something of a

mutiny against an unpopular boss. On the other hand, even a single instance of sufficiently severe conduct can create a hostile work environment. *Abbt*, 28 F.4th at 608. Because it is a close question, the court assumes for the sake of discussion that Velasco endured actionable harassment and turns to the other elements of her claim.

There is not a fact question as to the fifth element of Velasco's claim. That is, there is no evidence that Pinnacle knew or should have known of the harassment and failed to take prompt remedial action. If an employer knew of harassment and took prompt remedial action that was reasonably calculated to halt the harassment, it can avoid liability for a hostile work environment. *Williams-Boldware v. Denton Cnty., Tex.*, 741 F.3d 635, 640 (5th Cir. 2014). "An employer is put on notice of harassment when a person within the organization who has the authority to address the harassment problem or an affirmative duty to report harassment learns of the harassment in question." *Fossil Group*, 691 S.W.3d at 884–85 (internal quotations omitted). An employer may have constructive knowledge of harassment if the harassment was "so open and pervasive that the appropriate persons should have known of it had the employer opened its corporate eyes." *Id.* at 885–86 (internal quotations omitted).

Velasco's conclusory statement in her Charge of Discrimination that she reported, in a March 13 email, feeling sexually harassed by the drivers is insufficient. *See* ECF No. 24-1 at 2. As the court stated above, Velasco's March 13 email does not address sexual harassment. Velasco merely states in the email that she felt that the workplace was hostile, but Velasco does not raise any concerns that relate to a protected characteristic under the TCHRA. ECF No. 23-5 at 3.

Velasco testified that she talked to HR (Ms. Birdow and Mr. Coleman) about general harassment, but she never told them

about the sexually explicit comments the drivers made or the sex toy. ECF No. 23-4 at 31:2–32:8; 28:1–25. Velasco testified that she was not sure whether she referenced *sexual* harassment when she reported harassment. ECF No. 24-2 at 59:9–25 ("I used, bullying, I used, toxic environment, toxic work environment, but . . . I cannot guarantee that I used the word, sex, but overall I meant everything, harass [sic]"). The court has not identified any evidence in the record that Velasco reported that her tires were slashed or that someone keyed her car.

As to Velasco's April 6 email, Pinnacle did not have an opportunity to take remedial action prior to Velasco's termination because, at the time Velasco sent the email, she was suspended. Velasco was terminated the next day.

Velasco's argument that she reported harassment by sending a photo of the sex toy to Millan when she found it is unpersuasive. Velasco's text stated, "Should I put on group and ask whom ever it belongs to to take it home[?]" ECF No. 23-5 at 4. Millan responded "What is that?..." then, after Velasco sent another photo, Millan replied with several laughing emojis and stated, "Let's throw that away." *Id.* at 4–5. There is no indication that throwing away the item would not remediate the issue. At the time that Velasco found the item and texted Millan about it, it was an isolated incident. There is no evidence that any further remedial action was necessary, or if it was, what could have been done.

There is insufficient evidence before the court to create a fact dispute as to whether Pinnacle knew or should have known of the harassing conduct that Velasco has cited and that the court has found on its own. *See, e.g., Arredondo v. Elwood Staffing Servs., Inc.*, 81 F.4th 419, 435–36 (5th Cir. 2023) (finding that the employer did not have knowledge of the hostile work environment where plaintiff did not report the abuse she experienced). Velasco

19

has not shown that Pinnacle knew or should have known of the harassment and failed to take prompt remedial action.

Because Velasco has not identified any evidence in the record to support her claim and because the court has not identified any such evidence, Pinnacle's motion should be granted as to Velasco's harassment claim.

### D. Invasion of privacy

Texas recognizes multiple types of claims related to invasion of privacy. *Moore v. Bushman*, 559 S.W.3d 645, 649 n.2 (Tex. App.—Houston [14th Dist.] 2018, no pet.). The parties appear to agree that Velasco alleges an "intrusion-upon-seclusion" invasion of privacy. *See* ECF No. 24 at 16 (citing elements of an intrusion-upon-seclusion cause of action); ECF No. 23 at 19–20 (same). "This type of invasion of privacy includes a physical invasion of a person's property as well as eavesdropping upon private conversations with the aid of wiretaps or microphones, or spying." *Moore*, 559 S.W.3d at 649. To establish a cause of action for an invasion of privacy, a plaintiff must show "(1) an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns, which (2) would be highly offensive to a reasonable person." *Amin v. United Parcel Serv., Inc.*, 66 F.4th 568, 576 (5th Cir. 2023) (citing *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993)).

Pinnacle argues that Velasco's allegations do not rise to the level of an invasion of privacy. ECF No. 23 at 19–20. Velasco responds, again without citing any evidence, by arguing that "placing the 22-inch sex toy, in the area Plaintiff Analicia Velasco would find it is an intentional intrusion upon another's solitude which would be highly offense to a reasonable person and as such plaintiffs claims rise to the level of actionable invasion pf [sic] privacy." ECF No. 24 at 16.

Velasco has not met her burden. There is no evidence that anyone placed the item intentionally for Velasco to find. In any event, an invasion of privacy claim cannot succeed in a public space. *See Trusty v. Walmart Inc.*, No. CV H-20-235, 2020 WL 2497733, at *2 (S.D. Tex. May 13, 2020) (citing *Vaughn v. Drennon*, 202 S.W.3d 308, 320 (Tex. App.—Tyler 2006, pet. denied). The evidence shows that Velasco found the item in a cabinet in the drivers' area of her workplace. ECF No. 24-1 at 2. There is no evidence showing that Velasco, or any other person at Pinnacle, had a private domain or expectation of privacy in the drivers' area of the workplace. *See id.* (stating that the core of the tort is the offense of prying into the private domain of another).

Also, allegations of sexual harassment, offensive comments, and inappropriate advances are not cognizable as a cause of action for invasion of privacy under Texas law. *Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, 85 (5th Cir. 1997); *Sacks v. Tex. S. Univ.*, No. CV H-18-3563, 2019 WL 13043644, at *10 (S.D. Tex. Aug. 29, 2019). Texas courts have required a "physical invasion of a person's property or eavesdropping" to sufficiently establish an invasion of privacy claim. *Clayton v. Wisener*, 190 S.W.3d 685, 696 (Tex. App.—Tyler 2005, pet. denied); *Sacks*, 2019 WL 13043644, at *10. Velasco's claim does not meet this standard, and Pinnacle's motion as to Velasco's invasion of privacy claim should be granted.

### 4. Conclusion

The court recommends that Defendant's Motion for Summary Judgment, ECF No. 23, be **GRANTED**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S.

140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on January __27__, 2026.

_____
Peter Bray
United States Magistrate Judge